## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

281 CARE Committee, Ron Stoffel,
Citizens for Quality Education,
and Joel Brude,

                Plaintiffs,

                v.

Ross Arneson, in his official capacity as
County Attorney for Blue Earth County,
Minnesota, or his successor,
Michael Freeman, in his official capacity as
County Attorney for Hennepin County,
Minnesota, or his successor, and
Lori Swanson, in her official capacity as the
Minnesota Attorney general, or her successor,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5215 ADM/FLN

_____

William F. Mohrman, Esq., and Erick G. Kaardal, Esq., Mohrman & Kaardal, P.A., Minneapolis, MN, on behalf of Plaintiffs.

Daniel P. Rogan, Esq., and Beth A. Stack, Esq., Hennepin County Attorney's Office, Minneapolis, MN, on behalf of Defendants Ross Arneson and Michael O. Freeman.

John S. Garry, Esq., Minnesota Attorney General's Office, St. Paul, MN, on behalf of Defendant Lori Swanson.

_____

## I.  INTRODUCTION

On November 8, 2012, the undersigned United States District Judge heard oral argument on Plaintiffs' Motion for Summary Judgment [Docket No. 111]; Defendants Ross Arneson's and Michael Freeman's (the "County Attorneys") Motion for Summary Judgment [Docket No. 98]; and Defendant Attorney General Lori Swanson's Motion for Summary Judgment [Docket No. 106].  Plaintiffs challenge the constitutionality of Minn. Stat. § 211B.06, a statute prohibiting the

dissemination of certain false political statements.  Defendants argue the statute is constitutional,

and the Attorney General separately argues she is entitled to Eleventh Amendment immunity

from Plaintiffs' suit.  For the reasons stated herein, the County Attorneys' motion is granted;

Plaintiffs' motion is denied; and the Attorney General's motion is denied as moot.

## II.  BACKGROUND

Plaintiffs are Minnesota residents and organizations who campaign against ballot

initiatives that seek to increase funding for local school districts through the use of bond

increases and tax levies.  Plaintiff Ron Stoffel is the treasurer of Plaintiff 281 CARE Committee

("281 Care"), while Plaintiff Joel Brude is the Chair of Citizens for Quality Education.  First

Decl. of Erick G. Kaardal [Docket No. 44] at Exs. 1, 3.  Plaintiff Victor Niska, former Chairman

of Plaintiff W.I.S.E. Citizen Committee ("W.I.S.E."), died after the filing of the motions at issue,

and has been dismissed from the lawsuit.  Stip. of Dismissal [Docket No. 124].

Plaintiffs challenge the constitutionality of Minn. Stat. § 211B.06, a provision of the

Minnesota Fair Campaign Practices Act (FCPA).  The statute states in relevant part:

> A person is guilty of a gross misdemeanor who intentionally participates in the
> preparation, dissemination, or broadcast of paid political advertising or campaign
> material with respect to the personal or political character or acts of a candidate, or with
> respect to the effect of a ballot question, that is designed or tends to elect, injure,
> promote, or defeat a candidate for nomination or election to a public office or to promote
> or defeat a ballot question, that is false, and that the person knows is false or
> communicates to others with reckless disregard of whether it is false.

Minn. Stat. § 211B.06, subd. 1 (2012).  Minnesota has regulated knowingly false speech about

political candidates since 1893.  See Minn. Stat. ch. 1, § 199 (1894) (amended 1901).  However,

Minnesota did not begin regulating knowingly false speech about ballot initiatives until 1988.

Minn. Stat. § 211B.06 (1988) (amended 1998).  From 1988 until 2004, the FCPA's only

enforcement mechanism was the prosecution of alleged violators by the relevant county attorney. Id.  In 2004, the state legislature amended the FCPA to allow private persons to file a civil complaint before the Office of Administrative Hearings (OAH).  Id.; see Minn. Stat. § 211B.32. The amended FCPA allows a county attorney to bring criminal charges only after the civil complaint reaches a final disposition.  Minn. Stat. § 211B.32, subd. 1.

Plaintiffs have a history of involvement with § 211B.06.  In 2006, the B.U.I.L.D. Citizen Committee ("B.U.I.L.D.") filed a civil complaint with the OAH against the late Mr. Niska and his organization, W.I.S.E.  Third Decl. of Erick Kaardal [Docket No. 46] Ex. U.  B.U.I.L.D. supported a school bond referendum to raise money for a new school building in the Howard Lake, Waverly-Winsted School District.  Id.  In its complaint, B.U.I.L.D. alleged Mr. Niska disseminated campaign materials containing false statements about the impact of the school bond referendum.  Id.  The OAH found that B.U.I.L.D. had stated a prima facie case against Mr. Niska and W.I.S.E. but ultimately dismissed the complaint.  See id.  The OAH concluded that of the three statements at issue, two were not verifiably false and one did not fall under § 211B.06 because it was not a statement about the "effect" of a ballot initiative.  See id.

In late 2007, Stoffel and 281 Care campaigned against a Robbinsdale School District ballot initiative.  Ron Stoffel Decl., Apr. 14, 2009 [Docket No. 47].  After the initiative was defeated, 281 Care filed a "pre-emptive" suit against the district, alleging the infringement of free speech rights.  Id. at Ex. 1.  On November 8, 2007, the Superintendent for the district responded that the district was "weighing its options" for dealing with 281 Care's alleged use of false statements, including considering whether to pursue a case against Stoffel's organization. Id. at Ex. 3.  Neither the school district nor any other person filed an action against Stoffel, and

Stoffel voluntarily dismissed his claims without prejudice.  281 Care Committee v. Krause, No. 07-4560 JMR/FLN (D. Minn. July 8, 2008).

On September 19, 2008, Plaintiffs filed this action against several County Attorneys.[1] Plaintiffs allege that they have and will continue to engage in advocacy and campaigning involving statements that "will be interpreted" as false or misleading.  See, e.g., Am. Compl. [Docket No. 23] ¶ 38.  Section 211B.06, Plaintiffs allege, chills their ability to engage in vigorous political debate.  Plaintiffs thus seek a declaratory judgment ruling Minn. Stat. § 211B.06 unconstitutional, as well as permanent injunctive relief preventing Defendants from enforcing the statute.

In mid-2009, Defendants filed a motion to dismiss and Plaintiffs filed a motion for summary judgment.  Order, Feb. 19, 2010 [Docket No. 70].  On February 19, 2010, Judge Rosenbaum, now retired, granted the former and denied the latter.  Judge Rosenbaum held that Plaintiffs lacked standing to bring suit, that the issue was not ripe for decision, and that Plaintiffs had failed to state a claim upon which relief could be granted.  See id.

Plaintiffs appealed, and on November 17, 2010, the Eighth Circuit reversed the order granting dismissal.  The Eighth Circuit held that Plaintiffs had sufficiently established standing and ripeness, and that Minn. Stat. § 211B.06 should be subject to strict scrutiny analysis.  See 281 Care, 638 F.3d at 626-31, 633-36.  The court also held that the Attorney General was not protected by Eleventh Amendment immunity.  Id. at 631-33.  The Eighth Circuit remanded the case for further proceedings.  In the meantime, Judge Rosenbaum retired and this action was

---

[1] Because the parties agreed to dismiss Plaintiffs Niska and W.I.S.E., the relevant County Attorneys in this action, Michael Junge and Thomas N. Kelly, were also dismissed.  Stip. of Dismissal [Docket No. 124].

reassigned to the undersigned Judge [Docket No. 84].  Upon remand, the parties brought the present motions for summary judgment.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate.  Id.  However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . .  Instead, 'the dispute must be outcome determinative under prevailing law.'"  Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted).  However, "summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint."  Krenik, 47 F.3d at 959.

### B.  Scope of Decision

With this decision, the Court addresses only those provisions of Minn. Stat. § 211B.06 regarding ballot initiatives.  The parties do not offer any argument regarding the constitutionality

of the provisions governing statements about candidates, nor do they address the constitutionality of the statutory provision regarding letters to the editor.  The County Attorneys also argue that severing the ballot-related language from the statute would be an appropriate remedy if the Court were to find the language unconstitutional, and Plaintiffs do not object to this suggestion.  Plaintiffs' willingness to accept severance as a remedy indicates they do not challenge the remainder of the statute.

In addition, the Eighth Circuit noted the significant and long-standing distinction between knowingly false speech about candidates and knowingly false speech about political issues.  See 281 Care, 638 F.3d at 625.  The distinction between these two veins of speech restriction is significant; as the parties agree, knowingly false speech about candidates implicates defamation concerns while false speech about ballot initiatives does not.  Given the parties' arguments and the Eighth Circuit's holding, the Court will not rule on the constitutionality of Minn. Stat. § 211B.06 in its entirety.  Thus, this decision addresses only those portions of the statute the parties challenge: paid political advertising and campaign materials about ballot initiatives.

## C.  Standing

In their summary judgment memoranda, the County Attorneys revisit the issue of Plaintiffs' standing to bring suit.  The County Attorneys originally argued Plaintiffs had failed to establish sufficient injury in fact because Plaintiffs did not allege an intent to make maliciously false statements (i.e. knowingly false statements or statements made with reckless disregard for the truth) about ballot initiatives.  Defs.' Mem. Supp. Mot. Dismiss [Docket No. 49] 6.  Instead, the County Attorneys argued, Plaintiffs only alleged an intent to use exaggerated rhetoric that

6

might be interpreted as false.

The Eighth Circuit rejected the County Attorneys' argument. The appellate court held that for a First Amendment challenge of a state statute, a plaintiff need only "establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute." 281 Care, 638 F.3d at 627 (citation omitted). In evaluating First Amendment standing, the relevant inquiry is whether the plaintiff's decision to chill his or her speech was "objectively reasonable," meaning there is a "credible threat of prosecution." Id. (citing Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). In this case, the Eighth Circuit held that Plaintiffs had standing to sue because the legislature had recently enacted § 211B.06, which presented a credible threat of prosecution. 281 Care, 638 F.3d at 628. Perhaps just as importantly, the court also held that Plaintiffs' intent to engage in speech that "could reasonably be interpreted as making false statements with reckless disregard for the truth" justified an objectively reasonable fear of prosecution. Id. at 628. This fear amounted to sufficient injury in fact to support constitutional standing.

In their present motion, the County Attorneys again challenge standing, this time for a failure of proof. The County Attorneys argue that even if Plaintiffs sufficiently alleged standing at the motion to dismiss stage, they have failed to prove standing sufficient to survive summary judgment. Although Plaintiffs have submitted multiple affidavits and declarations over the course of this litigation, the County Attorneys argue Plaintiffs have failed to offer "specific facts" supporting Plaintiffs' standing. Defs.' Mem. Supp. Summ. J. [Docket No. 100] 15. For example, the County Attorneys argue Plaintiffs have not identified a specific ballot initiative they intend to oppose, nor have Plaintiffs provided examples of specific statements they intend

to use.  Id. at 15-16.  For their part, Plaintiffs respond that the Eighth Circuit expressly found Plaintiffs had standing to sue, and the County Attorneys are improperly re-opening an issue decided by the court.

Plaintiffs have established standing to bring this action.  First and foremost, the Eighth Circuit specifically directed this Court to evaluate the parties' arguments on their merits, and the rationale for the ruling remains sound.  The appellate court concluded that Plaintiffs had standing because a credible threat of prosecution existed by virtue of the recent enactment of § 211B.06.  That basis for standing is just as applicable at the summary judgment stage as it was during the motion to dismiss stage.  In addition, the Eighth Circuit held that Plaintiffs' fear of prosecution under the statute was reasonable given their alleged intent and past experiences.  Plaintiffs cite several declarations testifying to their intent to use heated, arguably-misleading rhetoric, and the chilling effect § 211B.06 has caused.  See, e.g., Decl. of Erick Kaardal, Dec. 23, 2008 [Docket No. 11] Exs. 1, 3, 4, 6; Decl. of Ron Stoffel, Apr. 14, 2009 [Docket No. 47]; Decl. of Joel Brude, Oct. 18, 2012 [Docket No. 120]; and Decl. of Ron Stoffel, Oct. 18, 2012 [Docket No. 121].  Plaintiffs have also cited evidence of Mr. Niska's past prosecution, and their awareness of the similarity of their own conduct to Mr. Niska's complained-of conduct.  See, e.g., Kaardal Decl., Dec. 23, 2008 at Ex. 1, ¶¶ 16, 23.  This evidence is sufficient to establish standing in the manner stated by the Eighth Circuit.

For the same reasons, the additional discovery requested by the County Attorneys under Rule 56(d) of the Federal Rules of Civil Procedure is unwarranted.  As the appellate court held, specific examples of proposed speech, or the identification of contested ballots, are unnecessary to establish a reasonable fear of prosecution.

**D. Constitutionality of Ballot Language in Minn. Stat. § 211B.06**

**1. Level of Scrutiny**

In the decision remanding this case, the Eighth Circuit directed this Court to apply strict scrutiny analysis to § 211B.06.  The appellate court held that knowingly false speech is not categorically exempt from First Amendment protection in the same manner as "fighting words, obscenity, child pornography, and defamation."  281 Care, 638 F.3d at 633.  In particular, the Eighth Circuit reasoned that knowingly false speech is not automatically akin to fraud or defamation; while knowingly false speech may be an element of fraud or defamation, false speech by itself does not implicate "important private interests" such as an individual's reputation.  Id. at 634.  As a result, knowingly false speech does not fall outside of First Amendment protection and any attempt to limit such speech is a content-based restriction.  The Eighth Circuit thus directed this Court to apply strict scrutiny—the default First Amendment test for content-based restrictions—to analyze the constitutionality of Minn. Stat. § 211B.06.

After the Eighth Circuit's decision in this action, however, the Supreme Court addressed the level of scrutiny appropriate for knowingly false speech.  In United States v. Alvarez, the Supreme Court addressed the constitutional challenge of a man charged under the Stolen Valor Act, 18 U.S.C. § 704, with falsely representing himself as a recipient of a decoration or medal from Congress or the armed forces.  United States v. Alvarez, 132 S. Ct. 2537 (2012).  In a split decision, a majority of the justices upheld the Ninth Circuit Court of Appeal's ruling that the Stolen Valor Act was unconstitutional.  Id. at 2551.  The majority also agreed that no categorical exemption from First Amendment protection existed for false speech.  See generally, id. at 2543-48.  In conducting its First Amendment analysis, however, the Court disagreed regarding the

appropriate level of scrutiny.  A four-justice plurality, led by Justice Kennedy, held that strict

scrutiny must apply to the Stolen Valor Act.[2]  See id. at 2548-51.  Although the plurality

recognized the compelling interests behind the Stolen Valor Act, it held that the law was not

necessary to achieve these interests and that less restrictive alternatives existed.  Id. at 2250-51.

As a result, the plurality found the act unconstitutional.  See id. at 2549-51.

Justice Breyer, joined by Justice Kagan, wrote a concurring opinion in which he agreed

that the Stolen Valor Act was unconstitutional.  Unlike the plurality, the concurring justices held

that intermediate scrutiny, not strict scrutiny, should apply to restrictions against knowingly false

speech.  Id. at 2551-52.  The concurrence held that false speech had less social value than other

types of speech, though it could still "serve useful human objectives."  Id. at 2553.  As a result,

the justices supported a "proportionality" analysis in which suitably narrow restrictions of false

speech would survive constitutional challenges.  See id. at 2554-56 (reviewing various examples

of restrictions against false speech, including perjury, fraud, and trademark infringement

statutes).  With regard to the Stolen Valor Act, the concurrence, like the plurality, expressed

serious concern that the statute criminalized speech made in "family, social, or other private

contexts."  Id.  at 2555.  The concurrence held that Congress could have passed a more "finely

---

[2]  The Alvarez plurality used the term "exacting scrutiny" instead of "strict scrutiny" in its analysis of the Stolen Valor Act.  In the past, the Supreme Court has used these terms interchangeably.  See, e.g., Burson v. Freeman, 504 U.S. 191, 198, 211 (1992).  But it has also used the term "exacting scrutiny" to refer to a potentially less-demanding standard in the context of disclosure laws.  See Minn. Citizens Concerned for Life, Inc. v. Swanson, 692 F.3d 864, 874-76 (8th Cir. 2012) (analyzing Supreme Court's use of "exacting scrutiny" in reviewing disclosure laws).  In Alvarez, it appears the plurality used the term "exacting scrutiny" to mean the highest level of constitutional scrutiny, because it applied the necessary elements of a strict scrutiny analysis.  See Alvarez, 132 S. Ct. at 2548-51 (discussing the "most exacting scrutiny" and considering the compelling interests behind the Stolen Valor Act, as well as whether the law was narrowly tailored); see also Minn. Citizens, 692 F.3d at 876 (observing same).

tailored" statute, perhaps by requiring a showing of harm or materiality.  Id. at 2556.  As a result, the concurrence joined the plurality in striking down the Stolen Valor Act.

In their motion for summary judgment, the County Attorneys argue that Justice Breyer's concurrence is the controlling opinion in Alvarez.  In support of this contention, the County Attorneys cite Marks v. United States, which held that when "a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ."  Marks v. United States, 430 U.S. 188, 193-94 (1977) (internal quotation omitted).  The County Attorneys reason that the application of intermediate scrutiny to false speech, as held by the Alvarez concurrence, is the narrower basis for striking down the Stolen Valor Act as unconstitutional.  Plaintiffs respond that Alvarez does not affect the Eighth Circuit's mandate, as strict scrutiny and intermediate scrutiny are mutually-exclusive bases for the Alvarez majority opinions.  Plaintiffs also argue that this case is sufficiently distinguishable from Alvarez, meaning the Eighth Circuit's holding in this case is not "clearly wrong" and thus overruled.  Pls.' Mem. Opp'n [Docket No. 122] 17 (citing Morris v. Am. Nat'l Can Corp., 988 F.2d 50, 52 (8th Cir. 1993)).[3]

Under the Marks rule, Justice Breyer's concurrence is the controlling opinion of Alvarez.

---

[3]  Plaintiffs also argue that neither level of scrutiny should apply in this case because restrictions on libel against the government, or its laws, are categorically unconstitutional.  This argument contradicts the Eighth Circuit's decision in this case, as the appellate court explicitly held that strict scrutiny should apply to Minn. Stat. § 211B.06.  Also, Plaintiffs too readily conflate libel against the government with false speech meant to mislead voters as to the effect of a ballot initiative.  Section 211B.06 restricts only certain types of false speech made with respect to the "effect of a ballot question"; as discussed in Section III.D.2.c.i., below, it does not restrict false statements about the State.

In applying <u>Marks</u>, appellate courts have attempted to discern which holding would elicit the support of the majority of justices.  <u>See, e.g.</u>, <u>United States v. Johnson</u>, 467 F.3d 56, 63-64 (1st Cir. 2006).  For example, the concurring justices in <u>Alvarez</u> would, in the future, invalidate as unconstitutional fewer false speech statutes than the plurality, since the concurrence supports the application of a less stringent level of scrutiny.  However, the <u>Alvarez</u> plurality would always agree with the concurring justices when the concurrence found a statute unconstitutional, as a statute that does not satisfy intermediate scrutiny could never satisfy strict scrutiny.  <u>See</u> <u>Alvarez</u>, 132 S. Ct. at 2552 (Breyer, J., concurring) (expressly placing intermediate scrutiny on a continuum between strict scrutiny and rational basis review).  As a result, the <u>Alvarez</u> concurrence is a "logical subset" of the plurality opinion and thus the narrower holding, as it would find fewer statutes unconstitutional while always enjoying the support of the majority.  <u>See</u> <u>Coe v. Melahn</u>, 958 F.2d 223, 225 (8th Cir. 1992) (holding Justice O'Connor's concurrence in <u>Hodgson v. Minnesota</u>, 497 U.S. 417 (1990), was the narrowest ground for the majority "because her approach would hold the fewest statutes unconstitutional"); <u>see also</u> <u>King v. Palmer</u>, 950 F.2d 771, 781 (D.C. Cir. 1991) (holding <u>Marks</u> rule only applies when one opinion is the "logical subset," or "common denominator," of the other).

Plaintiffs' argument that the facts of <u>Alvarez</u> are distinguishable from the facts in this case—and thus justify ignoring the effect of <u>Alvarez</u>—is not persuasive.  The Eighth Circuit relied on the Ninth Circuit Court of Appeals' underlying decision in <u>Alvarez</u> as part of its analysis in this case, implicitly holding that the facts and ruling of that decision are relevant to the facts and legal issues in this case.  <u>281 Care</u>, 638 F.3d at 634-36 (citing <u>United States v. Alvarez</u>, 617 F.3d 1198 (9th Cir. 2010)).  On review, both the plurality and the concurrence in

the Supreme Court's <u>Alvarez</u> decision address the restriction of false speech in broad terms, and

the concurrence specifically contemplates the restriction of false political speech.  <u>Alvarez</u>, 132

S. Ct. at 2556.  Finally, the facts in this case are not so different from the facts in <u>Alvarez</u> that

they warrant the application of entirely separate constitutional principles.  Both cases involve the

restriction of non-defamatory false speech and thus trigger many of the same considerations

discussed in the decisions cited above.

Having found intermediate scrutiny applies in this case, significant ambiguity remains in

Justice Breyer's <u>Alvarez</u> concurrence, and no appellate court has yet offered any guidance

regarding its application.  <u>Cf.</u> <u>State v. Crawley</u>, 819 N.W.2d 94, 119 (Minn. 2012) (Stras, J.,

dissenting) (noting that Justice Breyer's concurrence is "arguably the binding rationale of

<u>Alvarez</u>" under <u>Marks</u>).  In addition, the previous articulations of the intermediate scrutiny test

include different elements from those discussed in the <u>Alvarez</u> concurrence, and have

traditionally not applied to content-based restrictions of "pure" speech.[4]

It is not necessary for this Court to decide which version of intermediate scrutiny most

properly applies here, because Minn. Stat. § 211B.06 survives the strict scrutiny analysis.

Because the § 211B.06 satisfies the highest level of constitutional scrutiny, the statute would

also be found constitutional under any applicable intermediate scrutiny test.

---

[4]  <u>See, e.g.</u>, <u>SOB, Inc. v. Cnty. of Benton</u>, 317 F.3d 856, 860 (8th Cir. 2003) (citing
<u>United States v. O'Brien</u>, 391 U.S. 367, 377 (1968)) (applying four-factor test sometimes applied
to zoning ordinances and limits on commercial speech).  There is also the similar test for time,
place, and manner restrictions, which upholds a content-neutral statute if it is "narrowly tailored
to serve a significant government interest," but leaves open "ample alternative channels of
communication."  <u>Perry Educ. Ass'n v. Perry Local Educators' Ass'n</u>, 460 U.S. 37, 45 (1983)
(citations omitted).

### 2.  Strict Scrutiny

Under the strict scrutiny test, Defendants have the burden of showing that Minn. Stat. § 211B.06 is narrowly tailored to serve a compelling state interest.  Eu v. S.F. Cnty. Democratic Cent. Comm., 489 U.S. 214, 222 (1989).

As the Eighth Circuit has observed, the definition of "compelling interest" has proven elusive.  See Republican Party of Minn. v. White, 416 F.3d 738, 750 (8th Cir. 2005).  In evaluating whether a compelling interest exists, the Supreme Court has in some cases looked to policy considerations, while in other instances the Court has pursued the "realization of constitutional guarantees."  Id. (citing Stephen E. Gottlieb, Compelling Governmental Interests: An Essential But Unanalyzed Term in Constitutional Adjudication, 68 B.U. L. Rev. 917, 932-37 (1988)).  Once a compelling interest is identified, the application of strict scrutiny may still require a certain amount of balancing: the compelling interest at issue must be "important enough to justify the restriction it has placed on the speech in question in pursuit of that interest."  Id.

Even if a compelling interest exists, the statute at issue must still be narrowly tailored to pursue that interest.  Whether a statute is narrowly tailored depends on how closely connected the restriction is to protecting the State's interest.  As the Eighth Circuit has held, a statute is narrowly tailored if it:

> actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive), does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative).

White, 416 F.3d at 751 (collecting cases).  Each element of strict scrutiny analysis is addressed

below.

### a. Compelling Interest

The County Attorneys argue that Minn. Stat. § 211B.06 serves the compelling interest of preserving "fair and honest" elections and preventing a "fraud upon the electorate" through the deliberate spreading of material, false information.  Plaintiffs respond that the State does not have a legitimate interest in preventing voters from hearing false statements about ballot initiatives, and that its attempt to do so is paternalistic.  In addition, Plaintiffs argue Defendants have presented no evidence that § 211B.06 is necessary to prevent false statements; in other words, Plaintiffs argue that Defendants have presented no evidence that maliciously false statements about ballot initiatives are a problem in need of a solution.

More than once, the Supreme Court has observed that knowingly false political speech has the power to cause significant harm.  "[F]alse statements, if credited, may have serious adverse consequences for the public at large" if made during election campaigns.  McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 349 (1995).  There are also "those unscrupulous enough and skillful enough to use the deliberate or reckless falsehood as an effective political tool to unseat the public servant or even topple an administration."  Garrison v. State of La., 379 U.S. 64, 75 (1964).  And in the Alvarez concurrence, Justice Breyer wrote that in political contexts, violations of the Stolen Valor Act "are more likely to cause harm," thereby also acknowledging the potential for harm caused by lies in the political arena.[5]  See Alvarez, 132 S. Ct. at 2555.

The Supreme Court has also observed the tension between a functioning democracy and

---

[5] Justice Breyer wrote that the risk of "censorious selectivity" by prosecutors is also higher in the political realm.  See Alvarez, 132 S. Ct. at 2555.

maliciously false speech: "the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected." Garrison, 379 U.S. at 75 (addressing defamation statute). It thus follows that "the State has a legitimate interest in fostering an informed electorate," though pursuing this interest through restrictions of information should admittedly be viewed "with some skepticism." Eu, 489 U.S. at 228 (citations omitted).

Limiting the dissemination of knowingly or recklessly false statements about the effects of ballot initiatives is a compelling state interest. A ballot initiative is a key political function by which citizens directly shape public policy, and the process of persuading voters to vote for a particular result is often dependent on the efforts of private citizens. A ballot initiative may alter the way the state addresses a wide-ranging social or moral issue, but it may also affect a single neighborhood's public schools. In any scenario, it is a fundamental exercise of democratic participation. For this reason, courts, including the Eighth Circuit, have held that speech about ballot initiatives "is quintessential political speech . . . at the heart of the protections of the First Amendment." 281 Care, 638 F.3d at 635 (citing Mills v. Alabama, 384 U.S. 214, 218 (1966)). But it is also for this reason that the State has a compelling interest in implementing minimal, narrowly tailored safeguards against campaigns of misinformation. Deliberate or reckless efforts to mislead the public and change the outcome of a ballot measure not only have an adverse impact on the issue being decided, these efforts undermine the "premises of democratic government," including the necessity of free but fair debates.

### b. Actually Necessary

As an initial matter, § 211B.06 is directly linked to the harm the government seeks to

prevent, and is thus "necessary" to address the government's compelling interest.  See Alvarez,

132 S. Ct. at 2549 (holding that for a restriction to be "actually necessary," there must exist "a

direct causal link between the restriction imposed and the injury to be prevented").  The Supreme

Court has previously stated in dicta that a statute restricting knowingly false political speech

about candidates and ballot measures is a direct means to counter the "fraud" of voter

manipulation.  See McIntyre, 514 U.S. at 348-51.  In McIntyre, the Court struck down as

unconstitutional Ohio's prohibition against the anonymous distribution of campaign material.

See generally, id.  In doing so, the Court instructed Ohio to instead rely on its "detailed and

specific prohibitions" against making maliciously false statements regarding candidates and

ballot measures.  Id. at 351.  Without addressing their constitutionality, the Court impliedly

referred to these restrictions against false statements as Ohio's "principal weapon" against voter

deception.  See id.  The Court held that through such restrictions, "the State may, and does,

punish fraud directly."  See id. at 357.

McIntyre's reasoning is persuasive because Ohio's restriction against false statements

regarding ballot initiatives closely resembles the relevant portions of Minn. Stat. § 211B.06.

Consistent with Minn. Stat. § 211B.06, Ohio's statute specifically restricts a person from

posting, publishing, circulating, or otherwise disseminating "a false statement, either knowing

the same to be false or acting with reckless disregard of whether it was false or not, that is

designed to promote the adoption or defeat of any ballot proposition or issue."  Ohio Rev. Code

Ann. 3517.22(B)(2) (2012).[6]  The Court in McIntyre concluded that this statute directly

---

[6]  At the time the Court issued its decision in McIntyre, Ohio's restriction against false
speech regarding ballot initiatives was located at Ohio Rev. Code Ann. § 3599.092.  The Ohio
legislature amended and relocated the statute in 1995, but did not alter the relevant provisions.

addresses the malicious misleading of the electorate, particularly in comparison to other, broader prohibitions of speech.[7]  The Court's holding is thus directly relevant in establishing the causal link between Minn. Stat. § 211B.06 and the restriction against voter deception.

In addition, Plaintiffs' argument that the County Attorneys have failed to offer proof that false statements have altered the outcome of ballot initiatives is not persuasive.  In some cases, including Alvarez, the Supreme Court has indeed required empirical evidence demonstrating the causal link between the statute at issue and the purported state interest.  See, e.g., Alvarez, 132 S. Ct. at 2549 (citing Brown v. Entm't Merchs. Ass'n, 131 S. Ct. 2729, 2738 (2011) (regarding proof of harm caused by violent video games)).  But the "quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised."  Nixon v. Shrink Mo. Gov't PAC, 528 U.S. 377, 391 (2000).

In yet other First Amendment cases, the Supreme Court has found "various unprovable assumptions sufficient to support the constitutionality of state and federal laws."  Nat'l Ass'n of Mfrs. v. Taylor, 582 F.3d 1, 15 (D.C. Cir. 2009) (citing Nat'l Cable & Telecomms. Ass'n v. F.C.C., 555 F.3d 996, 1000 (D.C. Cir. 2009)).  In Taylor, the appellate court reviewed the constitutionality of a lobbyist disclosure statute and held that the issues were not "susceptible to

---

See 1995 Ohio Laws File 77 (S.B. 9).

    [7]  Plaintiffs argue that McIntyre established that false speech about ballot initiatives could not serve as a compelling state interest.  See McIntyre, 514 U.S. at 351-52 ("[The statute] applies not only to elections of public officers, but also to ballot issues that present neither a substantial risk of libel nor any potential appearance of corrupt advantage.").  But the quoted language pertains to the overbreadth of a prohibition against anonymous handbills, not against "arguably false or misleading" documents.  See id. at 351.  In addition, McIntyre held that the prevention of "false statements by unscrupulous prevaricators" was an "assuredly legitimate" interest.  Id.

empirical evidence." Id. at 16.  Instead, the court deferred to the "value judgment based on the common sense of the people's representatives, and repeatedly endorsed by the Supreme Court as sufficient to justify disclosure statutes." Id. (citations omitted).  Similarly, in Wersal v. Sexton, the Eighth Circuit "easily" concluded that the preservation of the appearance of judicial impartiality was a compelling interest without relying on empirical evidence.  See Wersal v. Sexton, 674 F.3d 1010, 1020-24 (8th Cir. 2012).  Instead of requiring empirical evidence, the court relied on relevant legal holdings and the Minnesota Supreme Court's Code of Judicial Conduct.  See id.

Here, the County Attorneys have sufficiently demonstrated the necessity of and causal link to their stated compelling interest.  The effects of knowingly false statements, or statements made with a reckless disregard for the truth, on the outcome of a ballot initiative do not lend themselves easily to empirical evidence.  Among other reasons making the collection of evidence difficult, the State does not and should not engage in the business of polling its citizens regarding what they voted for and why, and then publicly filing the results.  See Campaign for Family Farms v. Glickman, 200 F.3d 1180, 1187-88 (8th Cir. 2000) (discussing the importance of the secret ballot to American system of voting) (citations omitted).  Even so, both Plaintiffs and the County Attorneys submitted declarations, affidavits, websites, news articles, and OAH decisions into the record demonstrating that the use of false statements remains an issue of public concern.[8]

As a national issue, the harm of voter deception by maliciously false speech is a current

---

[8] See, e.g., William F. Mohrman Decl., Sept. 27, 2012 [Docket No. 114] Exs. 1, 2; Michael O. Freeman Aff. [Docket No. 101]; Joseph Mansky Aff. [Docket No. 102]; Beth A. Stack Aff., Sept. 27, 2012 [Docket No. 104] Exs. 3-7.

concern, and the restriction of such speech has longstanding precedents.  In addition to the

Supreme Court's holdings in <u>McIntyre</u> and <u>Garrison</u>, various state legislatures have adopted

statutes restricting false speech about campaign issues and ballot initiatives.  <u>See, e.g.</u>, Colo.

Rev. Stat. Ann. § 1-13-109 (2012); Mass. Gen. Laws ch. 56, § 42 (2012); Ohio Rev. Code Ann.

§ 3517.22; Utah Code Ann. § 20A-11-1103 (2012); <u>and</u> Wis. Stat. Ann. § 12.05 (2012).  Other

states have restricted false political statements about candidates.  <u>See</u> <u>Rickert v. State, Pub.</u>

<u>Disclosure Comm'n</u>, 168 P.3d 826, 867-68 (Wash. 2007) (Madsen, J., dissenting) (collecting

statutes).  Courts in a few states, including Washington, have ruled similar but less narrowly

defined statutes unconstitutional.  <u>See, e.g.</u>, <u>State v. 119 Vote No! Committee</u>, 957 P.2d 691

(Wash. 1998) (holding unconstitutional a statute that broadly prohibited all false political

statements of material facts made in political advertisements); <u>see also</u> <u>Rickert</u>, 168 P.3d at 855-

56.  Nevertheless, the restriction of knowingly false political speech has a long pedigree.

Finally, as previously noted, the Minnesota state legislature first adopted language

prohibiting false speech regarding ballot initiatives in 1988.  The original statute, however,

employed a standard of intent lower than actual malice; it prohibited knowingly false speech but

also speech made by a person who had "reason to believe" the speech was false.  Minn. Stat. §

211B.06 (1988); <u>see also</u> 1988 Minn. Laws Ch. 578, art. 3, § 6.  In 1996, the Minnesota Court of

Appeals invalidated the statute as unconstitutional, holding the "reason to believe" standard was

overbroad.  <u>State v. Jude</u>, 554 N.W.2d 750, 753-54 (Minn. Ct. App. 1996).  The court held that

the actual malice standard, discussed in <u>New York Times Co. v. Sullivan</u>, stated the proper

standard.  <u>See</u> <u>id.</u> (citing <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 279-80 (1964)).  In the

legislative session immediately following <u>Jude</u>, the state legislature amended Minn. Stat. §

211B.06 by replacing the "reason to believe" standard with "reckless disregard" in accordance

with the court of appeals' holding.  See 1998 Minn. Laws Ch. 376, § 3.  Given both the

longstanding legal principles at issue and the state legislature's judgment, Minn. Stat. § 211B.06

satisfies the "actually necessary" requirement of constitutional analysis.

### c.  Narrowly Tailored

Because Minn. Stat. § 211B.06 contains significantly limiting language, and because it

applies the actual malice standard, the Court holds the statute is narrowly tailored.

### i.  Overinclusive/overbroad

A statute is unconstitutionally overinclusive, or overbroad, if it "sweep[s] too broadly" in

restricting speech.  Wersal, 674 F.3d at 1024-26.  In addition to unnecessarily restricting speech

by its terms, a statute may be overbroad if it "chills" a speaker from engaging in otherwise

protected speech.  See Turchick v. United States, 561 F.2d 719, 721 (8th Cir. 1977).  In this case,

Plaintiffs argue Minn. Stat. § 211B.06 chills protected speech, including statements that could

reasonably be interpreted as false by a reader.  Plaintiffs also argue the statute is overbroad

because it impermissibly prohibits the expression of opinion.

Minn. Stat. § 211B.06 is narrowly tailored.  The statute includes several narrowing

provisions, including language limiting it to the dissemination of "paid political advertising or

campaign material."  This limitation specifically allows "breathing space" for oral statements

made in debates, on television, or on the street corner soapbox that might be made spontaneously

or in the heat of the moment.  A person passionately arguing for or against a ballot initiative thus

need never curb their unscripted oral statements to avoid violating § 211B.06.  Instead, the

restrictions only apply against those forms of expression that require deliberation and which also

tend to have a greater permanence than unscripted oral statements. While the provisions at issue

do not directly implicate defamation concerns, the difference between libel and slander is

instructive in discerning this narrow tailoring. See Restatement (Second) of Torts § 568 (1977)

(distinguishing between libel and slander in part based on the "degree of permanence and the

deliberation and premeditation of the defamer"). By targeting only more premeditated and

"persistent" forms of political speech, § 211B.06 both tailors and successfully balances the

restriction of knowingly or recklessly false speech against the protections of the First

Amendment. See White, 416 F.3d at 750.

The statute also preserves a speaker's ability to criticize the government, as it only

applies to certain speech made "with respect to the effect of a ballot question." Minn. Stat. §

211B.06, subd. 1. Plaintiffs correctly argue that the Supreme Court has emphatically held

against allowing the government, as an entity, to bring defamation claims. See 281 Care, 638

F.3d at 634 (citing New York Times, 376 U.S. at 291)). But the statute at issue does nothing to

restrict a person from disparaging the government using false statements. For example, the

statute would not apply to a flyer including the statement, "The School District has wasted $10

billion dollars of taxpayer money!" Instead, the statute targets only those statements specifically

intended to mislead voters regarding the effect of a ballot initiative; whether a statement

disparages the government is wholly immaterial.

In addition, although the actual malice standard in § 211B.06 does not categorically

exempt knowingly false political statements, the standard does narrow the statute's application.

Both the Eighth Circuit and the Supreme Court in Alvarez declined to hold that Garrison and

other cases addressing defamation establish that all knowingly false statements fell outside of

constitutional protection.  See 281 Care, 638 F.3d at 634 (citing Garrison, 379 U.S. at 75); see also Alvarez, 132 S. Ct. at 2546.  The Eighth Circuit also held that neither Brown v. Hartlage, 456 U.S. 45 (1982), nor McIntyre directly applied the actual malice standard to "false speech in the context of political campaigns on a ballot issue."  See 281 Care, 638 F.3d at 636.

This Court holds that while knowingly false political statements do not categorically fall outside of the First Amendment, the actual malice standard nevertheless narrowly tailors Minn. Stat. § 211B.06 sufficiently to satisfy strict scrutiny.  In Garrison, the Court reviewed a charge of criminal defamation against a district attorney for certain statements regarding the judges in his district.  Garrison, 379 U.S. at 64-67.  Because the case concerned public officials, the Court did not base its analysis on the private or reputational interests typically at issue in a defamation suit.  See 281 Care, 638 F.3d at 634.  Instead, Garrison focused on the protection of vibrant political discourse, noting that the "erroneous statement is inevitable in free debate, and it must be protected if the freedoms of expression are to have the 'breathing space' they need to survive."  Garrison, 379 U.S. at 75 (quotation omitted).  The Court held that application of the New York Times actual malice standard sufficiently allowed such "breathing space" because honestly held opinions, no matter how exaggerated or unpleasant, would remain protected by the Constitution, while calculated attempts to mislead voters would not.  See id. at 74-75.

Although this is not a defamation case, Garrison's reasoning regarding the protection of political discourse persuasively explains why Minn. Stat. § 211B.06 allows sufficient "breathing space" for free speech.  Plaintiffs argue that § 211B.06 is overbroad because it chills them, and other speakers, from fully engaging in political discourse about ballot initiatives.  In support of this contention, Plaintiffs offer declarations in which they testify about their intent to publish

written statements "opposing bond levies which contain strong political rhetoric, are exaggerated and may not be grounded in verifiable facts." See, e.g., Brude Decl., Oct. 18, 2012, at ¶ 20.  To a large extent, such statements will not meet the actual malice standard.  Minn. Stat. § 211B.06 restricts only those statements that Plaintiffs knew were false, or those statements for which Plaintiffs "in fact entertained serious doubts as to their truth" before publishing.  Cervantes v. Time, Inc., 464 F.2d 986, 990 (8th Cir. 1972) (citing St. Amant v. Thompson, 390 U.S. 727 (1968)) (discussing standard for reckless disregard for truth).  The line between strong rhetoric and deliberately misleading statements, as articulated in New York Times and Garrison, is clear, and it adequately protects First Amendment interests in free and open debate.

Plaintiffs argue that the mens rea requirement of § 211B.06 nevertheless fails to narrow the statute.  Because mental intent is necessarily based on circumstantial evidence, Plaintiffs argue the publisher of an innocently-false statement will always be at risk of prosecution.  But Minn. Stat. § 211B.06 has several procedural safeguards in place that drastically limit the potential for unfounded or abusive claims.  At the outset, a person may only file a civil complaint under § 211B.32 if they do so under oath.  Id. § 211B.32, subd. 3.  Within three days of filing, the OAH then conducts a prima facie review of the complaint.  Id. § 211B.33.  If the complaint fails to state a violation of § 211B.06, the OAH will dismiss the complaint.  Id.  If the complaint survives, the OAH holds a probable cause hearing.  Id. § 211B.34.  If the administrative law judge concludes that the complaint is frivolous, or that there is no probable cause to believe a violation occurred, the OAH must dismiss the complaint.  Id.

Only if a complaint survives to this stage will the OAH then conduct an evidentiary hearing before a panel of three administrative law judges, which must occur no later than 90

days after the original filing.  Id. § 211B.35.  The complainant has the burden of proving the

defendant's mental state, and all other elements of the statute, by clear and convincing evidence.

Id. § 211B.32, subd. 4.  Even if the complainant succeeds, the defendant may appeal to the

Minnesota Court of Appeals.  Id. § 211B.36, subd. 5 (referring to Minn. Stat. § 14.63, et seq.).

Further, the defendant may seek attorney fees and costs if the OAH deems the complaint

frivolous.  Id. § 211B.36, subd. 3.  Only upon the completion of this process may a county

attorney consider a criminal charge.  Id. § 211B.32, subd. 1.  This relatively demanding and

thorough process of review, combined with the complainant's burden of proof, deters unfounded

or abusive complaints.  Indeed, the relative scarcity of successful ballot-related complaints

brought to the Court's attention by the parties is testament to this fact.

Next, Plaintiffs' argument that Minn. Stat. § 211B.06 impermissibly restricts opinions

also fails because the argument relies on a stilted dichotomy.  As the Supreme Court and the

Eighth Circuit have recognized, the difference between a statement of fact and an opinion is

artificial, as opinions may include implicit statements of fact.  See Toney v. WCCO Television,

Midwest Cable & Satellite, Inc., 85 F.3d 383, 394 (8th Cir. 1996) (citing Milkovich v. Lorain

Journal Co., 497 U.S. 1, 19-21 (1990)).  The Eighth Circuit has thus held that "the First

Amendment absolutely protects opinion that lacks a 'provably false statement of fact.'"

Aviation Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 868 (8th Cir. 2005)

(quoting McClure v. Am. Family Mut. Ins. Co., 223 F.3d 845, 853 (8th Cir. 2000)).  Although it

is in a different legal context, Minn. Stat. § 211B.06 specifically avoids application to stated

opinions.  The statute applies only to those statements that are provably false; the vast majority

of opinions fall outside of this category.

Even when a person publishes a statement about the effect of a ballot measure that is verifiably false, a complainant under § 211B.06 must still prove that the speaker did so with knowledge that the statement was actually false or with reckless disregard for whether it was false.  See St. Amant, 390 U.S. at 731 ("high degree of awareness of probable falsity" a requirement for reckless disregard of the truth standard).  These two requirements, of: (1) a provably false statement, (2) made with actual malice, combine to exclude opinions from restriction under § 211B.06.  The statute only applies to maliciously false statements deliberately disseminated for the purpose of changing the outcome of a ballot measure.  A person entertaining an opinion in public debate would not come under this scope.

## ii.  Underinclusive

In addition to being overinclusive, a statute may also fail strict scrutiny if it is underinclusive.  The Supreme Court has held that a restriction is impermissibly underinclusive if it represents an attempt by the government to favor one side of a public debate over another.  Even if a statute does not discriminate among speakers, significant underinclusiveness may raise "serious doubts that the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."  Brown, 131 S. Ct. at 2740.  However, a "failure to regulate all speech" does not necessarily render a statute "fatally underinclusive."  See Burson, 504 U.S. at 207.  This is because legislatures ". . . adopt laws to address the problems that confront them."  Id.; see also White, 416 F.3d at 762-63.  Here, Plaintiffs argue Minn. Stat. § 211B.06 is underinclusive because it does not restrict: (1) television, radio, or internet speech; and (2) news media editorials.

Contrary to Plaintiffs' first argument, the plain language of § 211B.06 restricts the use of

knowingly false political statements in paid political advertisements on television and radio.  The statute restricts the "preparation, dissemination, or <u>broadcast</u>" of paid political advertising and campaign material.  <u>Id.</u> (emphasis added).  The word "broadcast," by its common definition, pertains to television and radio media,[9] and Plaintiffs offer no contrary argument as to how "broadcast" refers only to the written word.  As with written publications, paid political advertisements broadcast on television or radio media entail a level of pre-meditation and persistence of message greater than unscripted spoken statements.  Their inclusion in § 211B.06 comports with the overbreadth analysis discussed in Section III.D.2.c.i., above.

Similarly, the statute does not necessarily exclude mass emails or political websites from its application.  The FCPA defines "campaign material" as "any literature, publication, or material that is disseminated for the purpose of influencing voting at a primary or other election, except for news items or editorial comments by the news media."  <u>Id.</u> § 211B.01, subd. 2. Nothing in this definition, or in the undefined term "paid political advertisement," necessarily excludes a website, an internet advertisement, or a "mass email" from restriction under § 211B.06.  As with paper pamphlets, newsletters, and letters, the OAH must determine on a case-by-case basis whether a particular communication is a paid political advertisement or campaign material disseminated with the intent of influencing voters.

The County Attorneys argue, and the Court agrees, that the news media exemption is a

---

[9]  The dictionary defines "broadcast" as "[t]o disseminate (a message, news, a musical or dramatic performance, or any audible or visible matter) from a radio or television transmitting station to the receiving sets of listeners and viewers; said also of a speaker or performer." <u>Oxford English Dictionary</u> (Online ed. 2012).

legislative judgment that should be accorded deference.[10]  In an effort to narrowly tailor restrictions of speech, legislatures may legitimately exclude certain restrictions if they have a neutral justification for doing so, and do not attempt to favor one viewpoint over another.  See, e.g., Fraternal Order of Police, N.D. State Lodge v. Stenehjem, 431 F.3d 591, 601 (8th Cir. 2005); see also Nat'l Fed'n of the Blind v. F.T.C., 420 F.3d 331, 345-46 (4th Cir. 2005).  The legislature apparently decided in its efforts to restrict knowingly false speech about ballot initiatives that the news media did not present the same risk of harm as other speakers.  See Burson, 504 U.S. at 207.  By exempting the news media, the state legislature attempted to draw a narrower restriction that balanced First Amendment protection against the best means to achieve its stated interest.  In doing so, the State did not favor a particular viewpoint with regard to ballot measures.  The statute is not fatally underinclusive.

### iii.  Least restrictive means

If a statute limiting otherwise protected speech is achievable by less restrictive means, the restriction may not survive strict scrutiny.  See, e.g., Assoc. of Cmty. Orgs. for Reform Now v. City of Frontenac, 714 F.2d 813, 818-19 (8th Cir. 1983).  The Supreme Court has held that the least restrictive means test does not require the law at issue to be less restrictive than any imaginable alternative.  Instead, a statute is "unacceptable if less restrictive alternatives would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve." Ashcroft v. Am. Civil Liberties Union, 542 U.S. 656, 665-66 (2004) (citing Reno v. Am. Civil Liberties Union, 521 U.S. 844, 874 (1997)).  Plaintiffs argue, in the context of their compelling

---

[10]  Minn. Stat. § 211B.01, which defines "campaign material," includes the referred to news media exemption.

interest analysis, that counterspeech sufficiently remedies knowingly false statements about ballot measures.  Plaintiffs' argue counterspeech is a less restrictive yet equally effective means to prevent voter deception about ballot initiatives than Minn. Stat. § 211B.06.  The Court finds otherwise.

While counterspeech may partially address the State's compelling interest, it is not as effective as a limitation against maliciously false political speech about ballot measures.  Ballot initiatives occur in a variety of contexts in Minnesota, ranging from statewide issues to setting policy for a single, small school district.  For the broader, more fiercely contested ballot measures, counterspeech may serve as an equally-efficient remedy to the restrictions of § 211B.06.  Citizens and interest groups are more likely to have the interest and ability to correct calculated lies, perhaps even those made on the eve of voting.

However, for ballot measures regarding less controversial topics, or regarding local issues, counterspeech may not always suffice or even exist at all.  As Plaintiffs argue, large power or wealth disparities sometimes exist between the proponents and opponents of a given ballot measure, particularly regarding local issues.  Plaintiffs cite the potential for such disparity as one reason a person or entity might file abusive claims under Minn. Stat. § 211B.06.  But § 211B.06, by employing the force and impartiality of law, actually serves to check the unfair use of disparate advantage during a campaign.  In some instances, an interest group or citizens' group may go largely unopposed and thus have wide berth to mislead the voting public, perhaps in an effort to alter a ballot initiative in a way that materially benefits them.  In other instances, a group may so greatly outmatch a political opponent that the message, or correction, offered in response goes largely unheard.  In such cases, the use of deliberate, pernicious falsehoods may

be countered, or at least challenged, by a single person filing a claim under § 211B.06.

### 3. Vagueness

Plaintiffs briefly argue that Minn. Stat. § 211B.06 is unconstitutionally vague.  These arguments are not persuasive.  First, Plaintiffs argue that the statute's prohibition of "false information" offers no guidance for future conduct.  Setting aside the fact that the statute only uses the term "false information" with regard to an <u>exception</u> to the restriction, the statute provides sufficient guidance.  Section § 211B.06 specifically prohibits the dissemination of false "paid political advertising" and "campaign material," and the FCPA specifically defines the latter.  And contrary to Plaintiffs' assertion that it provides "no ascertainable standard for conduct," the statute expressly employs the actual malice standard discussed in <u>New York Times</u>.

Second, Plaintiffs argue the penalties attached to § 211B.06 are unclear.  However, § 211B.32 states that before a county attorney may bring a criminal charge, a civil complaint must be filed and finally disposed of.  Section 211B.35, subd. 2(d), allows the OAH to impose a maximum civil penalty of $5,000.  When the civil proceedings reach a final disposition, the relevant county attorney has discretion to bring a gross misdemeanor charge under § 211B.06, to which general state criminal laws apply.  Nothing about these penalties is unclear.

### E.  Attorney General's Eleventh Amendment Immunity Argument

The Attorney General also revisits an issue previously decided by the Eighth Circuit.  On appeal of Judge Rosenbaum's initial decision, the Attorney General argued that sovereign immunity precluded Plaintiffs' claims against her.  The Eighth Circuit disagreed, holding that the <u>Ex Parte Young</u> doctrine applied to exempt the Attorney General from immunity in this case.

See 281 Care, 638 F.3d at 631-33 (citing Ex Parte Young, 209 U.S. 123 (1908)).  Although the Eighth Circuit's ruling appears to have the same force of reason at the summary judgment stage as at the motion to dismiss stage, it is unnecessary to reach the issue as the claims are dismissed.

## IV.  CONCLUSION

Plaintiffs correctly note that our country's forefathers used rancourous, sometimes false statements to influence voters or even gain material benefits for themselves.  But what's past is not always prologue.  Over a century ago, the Minnesota legislature implemented minimal, narrow restrictions against knowingly false speech about political candidates in an effort to protect the debates between honestly held beliefs that are at the core of the First Amendment.  For nearly a quarter of a century, these restrictions have also applied to statements regarding ballot initiatives.  The ballot provisions in Minn. Stat. § 211B.06 reflect a legislative judgment on behalf of Minnesotan citizens to guard against the malicious manipulation of the political process.  The Court finds that the provisions at issue are narrowly tailored to serve this compelling interest.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

1.      Plaintiffs' Motion for Summary Judgment [Docket No. 111] is **DENIED**.

2.      Defendants Ross Arneson's and Michael Freeman's Motion for Summary

Judgment [Docket No. 98] is **GRANTED**.

3.      Defendant Lori Swanson's Motion for Summary Judgment [Docket No. 106] is

**DENIED**.

4.      All claims in the First Amended Complaint [Docket No. 23] are **DISMISSED**

**WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 25, 2013.